TITLE GUARANTY & SURETY COMPANY *v.* BANK OF FULTON.

Opinion delivered February 15, 1909.

1. INSURANCE—DELIVERY.—The acceptance of an application for fidelity insurance by a surety company and mailing of the bond or policy to the assured constituted a delivery of the bond or policy. (Page 477.)

2. FIDELITY INSURANCE—NECESSITY FOR EMPLOYEE TO SIGN.—A bond of a surety company guarantying the fidelity of an employee is not invalid because it was not signed by the employee if there was nothing

in the bond or in the negotiations which led up to it which made the employee's signature essential to the validity of such bond. (Page 478.)

3. Same—construction.—The bond of a surety company, when doubtful or ambiguous, must be given the strongest interpretation which it will reasonably bear against the surety company. *American Bonding Co.* v. *Morrow,* 80 Ark. 49, followed. (Page 479.)

4. Same—whether employer's statement is warranty or representation.—Statements of the assured which are made "the basis" of a bond issued by a surety company, but which are not expressly declared to be warranties, will be treated as representations merely, and the bond will not be avoided save for fraud or intentional misrepresentation. (Page 480.)

5. Evidence—letters as hearsay.—Letters of a stranger are incompetent to prove the matters alleged in them. (Page 481.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed on remittitur.

*J. W. Blackwood* and *Bradshaw, Rhoton & Helm,* for appellant.

Delivery and acceptance were necessary to the validity of the bond. Stearns of Sur., § 141. And the burden of showing this was on the plaintiff. 100 N. W. 138; 14 Cal. 421; 21 *Id.* 585; 151 Mass. 460. Written statements made by a corporation in an application to a bonding company for a bond guarantying the honesty of employees are in the nature of warranties, and their falsity will defeat a recovery on the bond. 19 Cyc. 523; 81 N. E. 330. Statements by an employer in support of his employee's declaration are warranties. 97 N. W. 836; 86 N. Y. Supp. 105; 24 App. D. C. 119. One who breaks a contract cannot recover from the other party thereto for a subsequent breach. 103 Fed. 427; 183 U. S. 402. The statements of the employer were matters upon which it was to determine what course it would pursue in the future. 95 Va. 480; 44 So. 449; 85 Pac. 692; 74 S. W. 1111; 126 Fed. 89; 116 Fed. 449. The bond should be construed most favorably to the guarantor. 183 U. S. 402; 186 *Id.* 350; 103 Fed. 427; 74 S. W. 1111; 126 Fed. 89.

*Jas. H. McCollum, John A. Hope,* and *Etter & Monroe,* for appellee.

The bond was sufficiently executed.. 61 Ark. 1; 85 *Id.* 169; 1 Martin's Ch. 227; 69 Am. St. 134; 41 *Id.* 534; 86 *Id.* 813;

14 Okla. 572. A corporation is not liable for the acts of its officers not performed in the usual course of their duties. 62 Ark. 33; 42 L. Ed (U. S.) 977; 80 Am. St. 271; 71 Am. Dec. 491; 81 *Id.* 131. In construing the bond all doubt should be resolved in favor of the insured. 67 Ark. 553; 25 Am. St. 133; 122 *Id.* 413; 23 Am. R. 198; 63 Fed. 48; Joyce on Ins. § § 1185, 1891, and 1934. The sureties on the bond of a bank cashier are not discharged by the fact that the cashier had before the bond was given committed a fraud upon the bank, if the bank's officers did not know it. 116 Mass. 275; 57 Tex. 72; 60 Me. 472; 52 Pa. 543; 101 Cal. 483; 45 N. J. L. 360; 91 N. Y. 353; 40 Atl. 384.

FRAUENTHAL, J. On June 22, 1906, T. C. Hockersmith was the cashier of the Bank of Fulton, and he had been such cashier for some time prior to that date. On that day he made application for a surety bond guarantying his fidelity as such cashier to Duncan, Horton & Robinson, located at Poplar Bluff, Missouri, who were the local agents of the Title Guaranty & Surety Company. On the same day Duncan, Horton & Robinson transmitted by mail the application to Title Guaranty & Surety Company, at Scranton, Pa., the domicil of that company, and in their letter stated that the application was for bond in the sum of $10,000 in behalf of T. C. Hockersmith as cashier of the Bank of Fulton. Thereafter the Title Guaranty & Surety Company transmitted by mail the bond from Scranton, Pa., to Duncan, Horton & Robinson, at Poplar Bluff, Mo., and in their letter transmitting same stated, "We enclose herewith bond No. 44,478 in behalf of T. C. Hockersmith, the premium upon which of $25.00 we have charged to your account." On June 28, 1906, Duncan, Horton & Robinson transmitted the bond by mail to T. C. Hockersmith, at Fulton, Ark., who at the time was cashier of the bank, and in their accompanying letter state: "We are pleased to enclose you Title Guaranty & Surety bond in the sum of $10.000 issued to the Bank of Fulton in your behalf as cashier." Prior to transmitting the bond to Fulton, Ark., a record of the bond was made in their registry by Duncan, Horton & Robinson, which shows "Bond No. 44478 dated May 16, 1906; term one year; expiration May 16, 1907; name of employer, Bank of Fulton; address, town of Fulton, Arkansas; position, cashier; amount of bond $10,000; premium $25."

The original bond could not be found, but E. M. Robinson, the agent of appellant, testified that it was on one of the regular forms of surety bonds issued by appellant, a copy of which was produced, and is as follows:

"THE TITLE GUARANTY & SURETY COMPANY.

Amout, $10,000.00                    Annual Premium, $25.00.

"Bond No. 44478.

"Whereas, Bank of Fulton, hereinafter called the Employer, is employing or intends to employ T. C. Hockersmith in the capacity as cashier; and,

"Whereas, the Employee has filed with the Title Guaranty & Surety Company, hereinafter called the Company, an application specifying the amount of security required from said Employee, and they jointly having applied to the Company for the grant of this bond; and,

"Whereas, the Company, in consideration of the sum of twenty-five and no-100 dollars, now paid as a premium from May 16, 1906, to May 16, 1907, 12 o'clock noon, has agreed, upon the terms, provisions and conditions herein contained, to issue this bond to the Employer; and,

"Whereas, the Employer has heretofore delivered to the Company certain representations and promises relative to the duties and accounts of the Employee, and other matters, it is hereby understood and agreed that those representations and such promises, and any subsequent representations or promises of the Employer hereafter required by or lodged with the Company, shall constitute part of the basis and consideration of the contract hereinafter expressed.

"Now, therefore, this Bond witnesseth, that for the consideration of the premises the Company, shall, during the term above mentioned, or any subsequent renewal of such term, and subject to the provisions and conditions herein contained, at the expiration of three months next after proof satisfactory to the Company, as hereinafter mentioned, make good and reimburse to the said Employer such pecuniary loss as may be sustained by the said Employer by reason of the fraud or dishonesty of the said Employee in connection with the duties of his office or position, amounting to embezzlement or larceny, and

which shall have been committed during the continuance of said term, or of any renewal thereof, or within six months thereafter or within six months from the death or dismissal or retirement of said Employee from the service of the Employer within the period of this bond, whichever of these events shall first happen; the Company's total liability on account of said Employee under this bond, or any renewal thereof, not to exceed the sum of ten thousand and no-100 dollars. * * * That no one of the above conditions or of the provisions contained in this bond shall be deemed to have been waived by or on behalf of the Company unless the waiver be clearly expressed in writing, over the signature of its president and its secretary, and its seal thereto affixed.

"And the Employee doth hereby for himself, his heirs, executors and administrators, covenant and agree to and with the Company that he will save, defend and keep harmless the Company from and against all loss and damage of whatsoever nature or kind, and from all legal and other costs and expense, direct or incidental, which the company shall or may at any time sustain or to be put to (whether before or after any legal proceedings by or against it to recover under this bond, and without notice to him thereof), or for or by reason or in consequence of the Company having entered into the present bond.

"In witness whereof, the said................(Employee) has hereunto set his hand and seal, and the Company has caused this bond to be sealed with its corporate seal, duly attested by the signature of its .......... President, and of its.......... Secretary, this ...... day of ............., one thousand nine hundred and .................signed, sealed and delivered by the Employee at...................

.......................................

"Employee.

In the Presence of:

.......................................

.......................................

"THE TITLE GUARANTY & SURETY COMPANY.

"Attest:

.......................................

Secretary."

On August 6, 1906, a draft of the Bank of Fulton on the Exchange National Bank of Little Rock for $25 was received by Duncan, Horton & Robinson in payment of the premium of the bond, which they had transmitted to appellant on July 25, 1906.

At the time the application was made for the bond there was transmitted therewith the following statement:

### "EMPLOYER'S DECLARATION.

"The foregoing applicant has been in the service of the undersigned Employer two years and ........ months, and the duties required have always been performed in a faithful and satisfactory manner. The accounts were last audited on the 11th day of June, and were correct in every particular. There has never come to the notice or knowledge of the Employer any act, fact or information tending to indicate that the applicant is negligent, unreliable, deceitful, dishonest or unworthy of confidence. As far as the Employer knows, applicant's habits are good, and the Employer knows no reason why you can not safely assume the suretyship applied for. The above and foregoing statements and representations are made for the purpose of inducing the Title Guaranty & Surety Company to execute said bond.

"Dated at Fulton, Arkansas, the 21st day of June, 1906.

"BANK OF FULTON (Employer)

"By H. L. B'Shers."

This statement was signed by H. L. B'Shers, who at the time was president of the Bank of Fulton.

On June 11, 1906, there was a stockholders' meeting of the bank At that meeting Hockersmith made a statement of everything relating to the books and accounts of the bank, and B'Shers and some one else went through the books. Hockersmith on that day made a report of the condition of the affairs of the bank to the board of directors, who examined the report. The officers of the bank had great confidence in Hockersmith, and did not know and had no reason to know of any dereliction or dishonesty on the part of Hockersmith; and when Mr. B'Shers signed the above statement he did so in good faith, believing same to be true. It appears from the teller's cash book that there was an item of debit on the account of Hockersmith of $1,492.25, which occurred on every date from February 21, 1906, until Hockersmith left the bank

in May, 1907. Hockersmith continued as cashier of the Bank of Fulton until May, 1907, when he absconded. Thereafter an examination of the books of the Bank of Fulton was made by an expert accountant, from whose testimony it appears that Hockersmith had embezzled from the Bank of Fulton the sum of $11,773.90 from May 16, 1906, to May 16, 1907. Thereafter the appellee instituted suit against appellant on said bond, and recovered judgment for $10,000 against appellant, from which this appeal is taken.

1. The appellant contends that the evidence in this case fails to show that the bond was actually delivered, or that it was signed by Hockersmith, and that on that account the judgment should be reversed. The testimony in this case shows that a written application was made and sent by mail by the cashier, Hockersmith, to the appellant, through its duly authorized agents, for the execution of the bond sued on herein; that the appellant accepted and approved the application, and thereupon signed the bond, and through its authorized agents sent the bond by mail to the appellee. The letter inclosing the bond was addressed to T. C. Hockersmith, at Fulton, Arkansas, who at the time was the agent and cashier of the appellee, at its place of business at Fulton, Arkansas. Within a short time thereafter the premium and consideration for the execution of the bond was paid to the appellant and accepted by it. This operated as a full delivery of the bond. In this case the bond was first sent by the appellant to its agents unconditionally, and with instructions to deliver the same to the appellee. This itself would bind the appellant, and was tantamount to a delivery to the appellee, even though the agent had never parted with the possession of the bond. *New York Life Ins. Co.* v. *Babcock,* 69 Am. St. Rep. 134. In fact, the acceptance of an application for indemnity or insurance, and mailing of the bond or policy are all the acts that are necessary or essential to put the contract into force. *Fidelity Mutual Life Ins. Association* v. *Harris,* 94 Tex. 25.

In the case of *Bostwick* v. *Van Voorhis,* 91 N. Y. 353, it was shown that one Bartow was chosen cashier of the bank, and his bond fixed at $30.000, upon which suit was brought. The bond was actually executed by the sureties, and Bartow thereafter entered upon the discharge of his duties as cashier. No

direct evidence was given that the bond was ever delivered to, or that it was ever in the possession of, the bank, or that the sureties were ever formally approved. And in that case it was held that it was a fair and legal inference from these facts that the bond was delivered to and accepted by the bank.

In the case of the *State Mutual Fire Insurance Association* v. *Brinkley Stave & Heading Co.,* 61 Ark. 1, this court held that when an application made to the local agent of a foreign insurance company is by him forwarded to the company at its domicil, at which place the application is accepted, and the policy of insurance signed and mailed to the applicant, the contract is then and there complete.

So in this case, when the appellant accepted the application for the bond and approved the same, and thereupon actually signed the bond and deposited it in the mail addressed to its agents, with instructions for unconditional delivery, and thereupon the agents mailed same to appellee, these acts constituted a delivery of the bond to appellee. *Travelers' Fire Insurance Co.* v. *Globe Soap Co.,* 85 Ark. 169. The letters that passed between the various parties showed clearly the execution of the bond, the amount thereof, the length of time for which it ran, and that it was executed to the appellee as obligee to guaranty the fidelity of Hockersmith, its cashier. The evidence shows that the premium for the bond was actually paid and received by the appellant, and the appellant therefore understood that the bond was in full force and effect.

It is claimed by the appellant that the evidence does not show that the cashier, Hockersmith, had signed the bond. This bond does not stipulate that it is essential to the validity of the contract that the employee, Hockersmith, should sign the same and that it should be of no effect until he did sign it. The bond was executed for the benefit of the appellee, and it was the one who under the terms of the bond was to be protected by its provisions. The appellee was the party indemnified and the sole obligee in the bond; and, unless the bond had expressly stated that it should not take effect until it was signed by Hockersmith, the employee, it was binding upon its execution by the appellant and delivery to the appellee. Nowhere in the correspondence, which was introduced in evidence, does the appellant even sug-

gest that the employee, Hockersmith, should sign the bond; and under the testimony in this case there is nothing to show that the signature of Hockersmith was essential to the validity of the bond. *First National Bank* v. *Fidelity Co.,* 100 Am. St. Rep. 765, p. 770, note.

2. It is urged by the appellant that the statement designated above as the "Employer's Declaration" became a part of the bond, and is a warranty, and that, if any of the statements therein contained is incorrect, the bond became thereby avoided. In order to determine whether these statements are warranties or mere representations, it is necessary to consider the nature of the bond sued on, and what construction the law makes relative to the provisions of such bonds. This is not an ordinary obligation given by a surety, but it is an indemnity bond, and is in the nature of a contract of insurance, insuring the fidelity of the employee. It is said by the court in *American Bonding Co.* v. *Morrow,* 80 Ark. 49: "It is now well settled that the bond of a surety company, like any other insurance policy, is to be most strongly construed against the insurer. The language of the bond is that selected and employed by the insurer, and, when doubtful and ambiguous, must be given the strongest interpretation against the insurer which it will reasonably bear." And so, in determining the nature of the provisions of this bond, we first look to see whether the provisions are susceptible of two constructions. If they are, then we must adopt that construction which is most favorable to the bank. This is the well settled doctrine as to the construction of such instruments as the bond sued on in this case. *American Surety Co.* v. *Pauly,* 170 U. S. 133.

Now, if it had been the intention of the parties to make these statements in the "Employer's Declaration" warranties, it should have been so stated. But the bond does not say that any of these statements is a warranty. It does not employ any language which says or can be construed to say that any of these statements is a warranty. If it had been so desired, the bond could have well stated that if any of the statements made in the "Employer's Declaration" was incorrect, then the bond should be void. But there is no language of that kind in the bond, or in the "Employer's Declaration," and the court cannot construe any such language into it.

In the case of *Supreme Council of Royal Arcanum* v. *Brash-*

*ears,* 89 Md. 624, it is held that statements by an applicant for life insurance which by the terms of the policy are made part of the contract with the insurance company are not to be regarded as warranties, unless the policy upon its face plainly declares that they shall be treated as such. *Supreme Council, etc.* v. *Fidelity & Casualty Co.,* 63 Fed. 48. The general rule is that a statement in an application is a representation, rather than a warranty, unless it is made a warranty by express terms, or by such language that it cannot be construed otherwise. 2 Joyce on Insurance, § 1891.

It is contended that, because the bond states that the representations in the declaration shall constitute a part of the basis of the contract, these representations should be considered warranties. But in the case of *American Popular Life Insurance Co.* v. *Day,* 23 Am. Rep. 198, the application for the policy involved contained an agreement that the answers and statements should be the basis and form part of the contract of the policy, and the policy further declared that the insurance was in consideration of the representations; and in that case the court held that the agreement and statements in the application were not warranties, and that the policy could be only avoided for fraud or intentional misrepresentation.

It is well settled that forfeitures are never favored; and if the contract does not specifically and definitely provide for such forfeiture, the courts will not by a species of construction read a forfeiture into it. So, in the construction of the provisions of this bond, if by any reasonable interpretation thereof a forfeiture of it can be avoided, such interpretation should be given to it, and the contract sustained. Taking into consideration all of the terms contained in the "Employer's Declaration," it is shown that it was intended by the statements therein to represent the condition of the bank and the accounts of the bank, as it was then understood, and the character and habits of the employee, Hockersmith, as then known to the employer. These were mere representations; and if they were made honestly and in good faith, the fact that they were incorrect would not vitiate the bond. The testimony shows clearly that these representations were made in good faith, and that there was an honest basis for the making of the same. There had been a meeting of the board of directors

and a report of the condition of the bank was presented to them, and the books of the bank were before them. It is true that no expert accountant examined these books and accounts, but the terms of this declaration did not call for such an examination. The examination made was such as the board of directors were accustomed to make of the accounts of the bank, in the ordinary discharge of their duties, and the statement set forth in the declaration was honestly made. We are therefore of the opinion that, even though the above "Employer's Declaration" was duly authorized by the bank, and the statements therein were afterwards found to be incorrect, they were not warranties, nor were they of such material and essential nature as that their incorrectness would work a forfeiture of the contract, if they were made in good faith.

3. It is urged by the appellant that the evidence does not show that the shortage amounted to $10,000. The evidence shows that, soon after the cashier, Hockersmith, absconded, the appellant sent to the Bank of Fulton an expert accountant for the purpose of going thoroughly through the books and accounts of the bank and finding out the amount of the shortage during the life of the bond—between May 16, 1906, and May 16, 1907. This accountant testified that the amount of the shortage that occurred during that period was $11,773.90. This shortage was made up of items to which the accountant testified, and the only items that were not established by competent testimony were the item of $2,000 for currency shipped May 11, 1907, by the National Bank of Commerce, of St. Louis, and the item of $1,000 for the currency shipped on May 6, 1907, by Exchange National Bank of Little Rock. The accountant testifies that he did not get the information as to these two items from the books of the Bank of Fulton, and that he only obtained the information from letters, or statements contained in letters, sent by the banks claiming to have shipped the currency. Such letters were *ex parte* statements, and did not prove by themselves the statements therein contained. Such testimony was not competent to show that said items of currency had been actually shipped to and received by the Bank of Fulton, or its cashier. The witness testified that he obtained this information outside of the books of the bank, and there was no competent evidence introduced relative to

these two items. And the court is therefore of the opinion that these two items of the shortage have not been proved by competent evidence; and that the amount of the shortage that occurred during the life of the bond, as shown by competent evidence, is $8,773.90.

If, therefore, the appellee, will within 15 days file a remittitur, so as to make the amount of judgment $8,773.90, the judgment of the lower court will be affirmed; otherwise the judgment will be reversed, and the cause remanded for a new trial.

Battle, J., dissenting.