WARREN COTTON OIL & MANUFACTURING COMPANY *v.* GORMAN.

Opinion delivered April 3, 1916.

1. FERTILIZERS—INGREDIENTS—EVIDENCE OF RESULTS—USE OF.—In an action to recover on notes given for the purchase of fertilizer, it is competent to show results following its use, in order to determine whether the fertilizer contained the guaranteed ingredients, required by the statute, and stated in its formula and on its labels.

2. FERTILIZERS—INGREDIENTS—SALE.—Appellant sold certain fertilizer to the appellee, taking notes therefor; in an action on the said notes the appellant was entitled to a recovery, under Act 398, p. 995, Acts 1907, if the jury found that the fertilizer contained the ingredients named in the per cent. stated on the tags attached to

the sacks, or if there was no greater deficiency than three per cent.

3.  FERTILIZERS—INGREDIENTS—VALUE.—In an action for the purchase price of certain fertilizer, if the same did not contain the percentages required by the statute, it is a question of fact whether the commodity sold was a commercial fertilizer, and had any value as such; if it had a value as such, then the recovery would be proportionate to that value, but if it did not contain the guaranteed percentages and had no value, then no recovery could be had.

4.  FERTILIZER—INGREDIENTS—CERTIFICATE OF CHEMIST—PRIMA FACIE EVIDENCE.—Under Act 398, p. 995, Acts of 1907, the certificate of the chemist of the Department of Mines, Manufactures and Agriculture is admissible when offered in evidence, and shall be taken as *prima facie* true, on the issue of the chemical composition of the fertilizer, which is under consideration.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; affirmed.

*D. A. Bradham,* for appellant.

1.  The evidence shows an absolute compliance with Act 398, Acts 1907, p. 995. The samples showed a commercial value in excess of the requirements of law except one and that one only one-eighth per cent, which under the act would not allow for a reduction. Hence a verdict should have been directed for appellant.

2.  The court erred in refusing plaintiffs instruction No. 1, in modifying No. 1 asked by defendant and in giving an oral instruction upon its own motion. Acts 1907, 995; Acts 1913, p. 758. There was no warranty that the fertilizer was guaranteed to produce crops. 18 Southeastern, 267; 102 Am. St. 618, (3) note; 114 *Id.* 44; 74 Ark. 148; 26 N. W. 3; 140 S. W. (Tex.) 356; 35 Cyc. 409, (x); 64 S. E. 650; 108 Ark. 260.

3.  The testimony of witnesses that the fertilizer had no beneficial results upon their cotton was incompetent and prejudicial. 78 Ark. 182; 75 *Id.* 463. The burden was on appellee to show that the fertilizer was not as guaranteed. The act makes the analysis admissible as evidence in the courts on any trial of an issue as to the merits of the fertilizer.

*B. L. Herring,* for appellee.

1. A manufacturer impliedly warrants that the goods purchased, are fit for the purposes for which they are sold. 33 L. R. A. (N. S.) 501; 64 Ga. 601; 48 Ark. 325; Acts 1907, 995. The act creates a warranty by statute. The instructions are correct. The evidence is convincing that the fertilizer was without value for the purpose sold—a cotton fertilizer. The act could not make the official analysis *conclusive* evidence, but only *prima facie.* 32 Ark. 131; 33 *Id.* 816.

2. The evidence was competent. 32 Ark. 131; 33 *Id.* 816; 3 Enc. Ev. 291 and notes. Any material evidence may be sustained by circumstantial evidence. 103 Ark. 61; 16 Cyc. 1111; 42 Ark. 542 554; 16 Cyc. 1139c.

SMITH, J. This suit was begun in the court of a justice of the peace to enforce the collection of two notes, of $40 each, given in payment of the purchase price of eighty sacks of fertilizer sold by appellant to appellee in the spring of 1913. The fertilizer was known as "Cotton King," and a certificate had been issued by the Bureau of Mines, Manufactures and Agriculture authorizing appellant to sell this and other brands of fertilizer. The certificate relating to this fertilizer gave the guaranteed chemical composition of the same, showing the guaranteed percentage of phosphoric acid, nitrogen and potash, which constituents made the fertilizer. The department had made commercial analysis of four samples of this fertilizer and each analysis had shown the requisite per cent. of the ingredients named as required by the law.

It is insisted on appellant's behalf that the fertilizer had been mixed at its plant in accordance with its formula, and, therefore, contained the requisite elements to make the fertilizer which it was authorized by the Bureau of Mines, Manufactures and Agriculture, to sell. Appellee offered the evidence of his farm-hand and a number of farmers to the effect that they had used this fertilizer and had obtained no satisfactory results from its use.

The instructions given and refused indicate the respective theories of the parties at the trial. Appellant's

theory was that the only question in the case was whether the fertilizer contained the ingredients named and that it was, therefore, incompetent and prejudicial for appellee to be allowed to show that satisfactory results were not obtained. On the other hand, appellee's position was that the fertilizer should, not only contain these ingredients, but should also have some value as a fertilizer and that no recovery could be had unless it had such value. Appellant asked the following instruction, numbered 1:

"You are instructed that under the law in this case the only defense the defendant may offer is that the fertilizer did not come up to the guaranteed commercial value, and if you find from the evidence that the fertilizer did not fall more than 3 per cent. below the guaranteed commercial value, or come up to the guaranteed commercial value, you will deduct the amount of the deficiency in commercial value from the face of the note and give a verdict for the amount of the face of the note less this amount. In any event, your verdict will be for the plaintiff in some amount."

This instruction was modified by striking out the words, "in any event," and by adding to the instruction the clause, "provided, you find the fertilizer had any value as such." Other instructions given and refused embody the same views of the law.

The instruction set out was not correct in directing the jury to find for appellee in any event in some sum and, was, therefore, properly refused by the court.

Section 2 of Act No. 398, Acts 1907, p. 995, regulating the inspection and sale of commercial fertilizers provides that the guaranteed analysis of the fertilizer giving the valuable constituents of the fertilizer in the minimum percentage only, shall be branded or printed on each package of the fertilizer; and it is not denied that the sacks sold appellee were so branded.

Section 3 of the same act provides that, if any commercial fertilizer offered for sale in this State shall, upon official analysis, prove deficient in any of its ingredients as guaranteed and branded upon the sacks and, if by rea-

son of any such deficiency, the commercial value thereof shall fall 3 per cent. below the guaranteed total commercial value of such fertilizer, or fertilizer material, then any note or obligation given in payment thereof shall be collected by law only for the amount of the actual total commercial value as ascertained by said official analysis.

(1)   Our act on the sale of commercial fertilizers appears to be so similar to the law of Georgia on this subject as to suggest that our statute was borrowed from that State. Georgia Laws 1901, p. 65. Section 3 of our act is practically identical with section 3 of the Georgia statute except that the Georgia statute provides for a cause of action on the part of the consumer against the seller for any damages occasioned by reason of such deficiency. The Supreme Court of that State in the case of *Cooper* v. *National Fertilizer Co.*, 64 S. E. 650, had occasion to construe the provision in regard to a variance of less than 3 per cent. between the total commercial value of the fertilizer ingredients as guaranteed and as printed on the sacks, and held that its effect was to render immaterial any variance not exceeding 3 per cent. But the act contemplates of course, that the ingredients stamped on the sack shall have been used in a sufficiently substantial proportion to the per cent. guaranteed for the commodity to be a fertilizer. As to whether this is true or not is, of course, always a question of fact which may be inquired into and any evidence which tends to elucidate that question is competent. So, here, the evidence of the farmers and of the hired hand was competent. As its name would imply the fertilizer was sold to be used by cotton growers, and it was permissible for persons who had used it properly to state the results obtained, and witnesses testified here that they were accustomed to the use of fertilizers and used this fertilizer in a proper manner. The jury was warranted in drawing the inference that, if the fertilizer contained the ingredients advertised and guaranteed, or contained them in some substantial amount, it would help make cotton, and that, if it did not do so, it did not contain the specified ingredients or any

considerable proportion thereof. As tending, therefore, to show that the fertilizer did not contain the guaranteed ingredients it was competent to show results flowing from its use; but the jury was told that this was the only defense that could be made to the notes. The question at issue was, not whether the fertilizer was a valuable one, but whether it contained the guaranteed ingredients in the per cent. stated, or in sufficient quantities to be a fertilizer at all.

(2-3)   An instruction should have been given, had one been asked, to find for the appellant for the amount of the notes if the jury found the fertilizer contained the ingredients named in the per cent. stated on the tags attached to the sacks, or to do so if there was no greater deficiency than 3 per cent. But the act has not undertaken to make a greater deficiency than 3 per cent. immaterial and if the fertilizer did not, in fact, contain the per cent. stated, or within 3 per cent. of that amount, it then became and was a question of fact whether the commodity sold was a commercial fertilizer and had a value as such. If it had a value as such then the recovery should be proportionate to that value, but if it did not contain the guaranteed per cent. and had no value, then, of course, a recovery would not have been proper in any sum. The instruction as asked did not present this view of the law and there was, therefore, no error in refusing to give it as asked, and we think the instruction as modified fairly conforms to this view under the issues made and the respective theories of the parties urged at the trial.

(4)   It is finally urged that the evidence of the farmers was incompetent under section 12 of this act and that the certificate of the chemist of the Department of Mines, Manufactures and Agriculture is made the only, and the conclusive, evidence of the composition of the fertilizer. In answer to this it may be said, first, that no certificate of this chemist showing the analysis of this fertilizer was offered in evidence. In further answer it may be said that section 5 of this act makes the tag attached to the package

*prima facie* evidence that the seller has complied with the requirements of this act. The language employed in section 12 making the analysis of the chemist admissible in evidence in any of the courts of this State on the trial of any issue involving the merits of any such fertilizer must be construed as making this certificate *prima facie* evidence of such merits. In providing what shall be evidence the Legislature has no greater authority than this and we interpret the language which the Legislature employed as meaning only that this certificate shall be admissible when offered in evidence and shall be taken as *prima facie* true. *Cairo & F. R. Co.* v. *Parks*, 32 Ark. 131; *State* v. *Newton*, 33 Ark. 284; *L. R. & F. S. Ry. Co.* v. *Payne*, 33 Ark. 820; *Clayton* v. *Johnson*, 36 Ark. 414, *Smith* v. *Leach*, 44 Ark. 292; *Taylor* v. *State*, 65 Ark. 602; *Oliver* v. *C. R. I. & P. Ry. Co.*, 89 Ark. 471; *Winn* v. *Whitehouse*, 96 Ark. 44.

Finding no prejudicial error the judgment will be affirmed.