FARMERS UNION GRAIN COMPANY, APPELLEE, v. UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLANT.

FILED OCTOBER 20, 1922. No. 22073.

1. Insurance: GUARANTY BOND: LIABILITY. A guaranty company is liable on its bond insuring the fidelity of an employee, without his signature, when issued upon his application, except in cases where it is positively and specifically provided that no liability attaches without it.

2. ———: APPLICATION: WARRANTIES. "Statements contained in an application for the issue of a policy of insurance will not be construed as warranties unless the provisions of the application and policy taken together leave no room for any other construction." Modern Woodman Accident Ass'n v. Shryock, 54 Neb. 250.

3. ———: GUARANTY BOND: STATEMENTS BY EMPLOYER. Certain answers set out in the opinion were made in a written statement

by an employer to the obligor in a bond of indemnity against the dishonest acts of an employee. *Held,* (1) not to be warranties, but representations; (2) that in order for such representations to constitute a defense to an action on the bond it is incumbent upon the bonding company to plead and prove that the statements and answers were made as written in the employer's statement; that they were false; that they were false in some particular material to the insurance risk; that they were made intentionally by assured; and that they deceived the bonding company to its injury.

4. Evidence examined, and *held* sufficient to sustain the verdict.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*McGilton & Smith* and *Gaines, Van Orsdel & Gaines,* for appellant.

*Baker & Ready* and *Cain & Johnson, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, ALDRICH, DAY and FLANSBURG, JJ.

ALDRICH, J.

This is an action at law brought by the Farmers Union Grain Company, a corporation, organized and existing under the laws of the state of Nebraska, as plaintiff, against the United States Fidelity & Guaranty Company, a corporation, and Charles S. Borin, as defendants. Plaintiff company instituted proceedings to recover on the defendant company's bond by which defendant undertook to insure plaintiff to the amount of $25,000 for losses incurred through the employment by plaintiff of its manager, Charles S. Borin. The bond was dated August 20, 1917, to be in force one year from that time, and was delivered to the Farmers Union Grain Company, though never signed by Charles S. Borin. The bond was renewed August 20, 1918, for another year.

On August 1, 1917, a new company, the Borin Grain Company, was formed by Mr. Shultz, the president of the Farmers Union Grain Company, and Charles S. Borin. They signed a contract to the effect that the business of

144          NEBRASKA REPORTS.          [VOL. 109

Farmers Union Grain Co. v. United States Fidelity & Guaranty Co.

the Farmers Union Grain Company was to be conducted in the name of the Borin Grain Company, and that Charles S. Borin should be its manager. On December 1, 1917, the Borin Grain Company was incorporated under the laws of the state of Nebraska. Charles S. Borin continued to act as manager until the month of February, 1919, when he disappeared leaving a deficit of an amount over and above $25,000 in his accounts with the Borin Grain Company at that time.

In its petition plaintiff alleges the execution of the fidelity bond by the defendant, the employment of Charles S. Borin as its agent and manager, for the purpose of conducting a grain commission business in the city of Omaha, Nebraska, the defalcation and misappropriation of funds in the amount of $41,198.93 of the money of the plaintiff by Charles S. Borin, the refusal of the defendant to reimburse the plaintiff to the extent of the bond for this defalcation, and prayed for judgment in the amount of $25,000.

In its third amended answer the defendant company set up four defenses, in substance, as follows: (1) General denial; (2) the bond was not signed by the principal, Charles S. Borin, and that this was unknown to defendant until about the time this suit was brought; (3) the alleged falsity of statements and representations contained in the employer's statement relative to the nature and extent of the business and the manner in which it was to be transacted by Borin; (4) the alleged incorporation of the Borin Grain Company, whereby Borin ceased to be an employee of the Farmers Union Grain Company and became an employee of the Borin Grain Company.

During the trial defendant was granted leave to amend its answer by setting up a fifth defense, which, in substance, was that the bond was renewed for a second year upon the strength of the statements contained in the application for such renewal; that such statements were false, but were unknown to the defendant as such; and therefore the defendant was relieved from all liability by

reason of any defalcations arising subsequent to August 20, 1918. In view of the instructions given to the jury relative to this defense, they decided that particular issue in favor of defendant. Further inquiry into the fifth defense is unnecessary as that issue has been finally disposed of by the trial court.

The second defense was also disposed of by the trial court in instruction No. 8, given to the jury. No reference is made by appellant in its assignment of errors to instruction No. 8, nor is any complaint made relative to the correctness of such instruction.

The jury returned a verdict of $17,814, with interest at the rate of 7 per cent. per annum from June 28, 1919, to the date of the verdict, in favor of plaintiff, and in view of the instructions of the court this was the amount of the defalcation found during the first year of the bond. Judgment was entered accordingly, and defendant appeals.

The first proposition which we will discuss is whether defendant is relieved from liability because of the failure of Charles S. Borin, the employee, to sign the bond.

The case of *Title Guaranty & Surety Co. v. Bank of Fulton*, 89 Ark. 471, 33 L. R. A. n. s. 676, is directly in point. In that case the court disposed of this identical issue.

The defendant in the instant case had all the data and drew the bond in question, and therefore had an opportunity to use all its ingenuity to make the bond consistent with the contentions now advanced. Defendant Borin received the confidence and influence that attaches to such an obligation and was trusted with all the responsibility. There is nothing in the conditions of the bond which require that it should be signed by the employee.

This failure on the part of Borin to sign the bond will not release defendant only in such cases when the sureties sign upon conditions known to the obligee, and that the bond is only to take effect when it is signed by the principal. This was fully illustrated in the case of *Clark v. Bank of Hennessey*, 14 Okla. 572. That case, on a propo-

sition entirely analogous to this, completely sustains the principle laid down in *Title Guaranty & Surety Co. v. Bank of Fulton, supra.* This is also the law of this jurisdiction. *Johnson County v. Chamberlain Banking House,* 80 Neb. 96.

For other cases along this line, see *Douglas County v. Bardon,* 79 Wis. 641; *State Mutual Fire Ins. Co. v. Brinkley Stave & Heading Co.,* 61 Ark. 1, 29 L. R. A. 712; *Adams Co. v. Nesbit,* 38 S. Dak. 11; Stearns, Suretyship (2d ed.) sec. 149.

The next question is whether the declarations made by Mr. Shultz, president of plaintiff company, in the employer's statement to the defendant company were warranties and conditions precedent to be performed before a recovery could be had on the bond, or whether such declarations were in the nature of promissory representations requiring but substantial performance. The employer's statement, among other things, contained the following questions and answers:

"6.  (a) What will be the title of applicant's position?
        A. Manager.
    (b) Explain fully his duties in connection therewith.
        A. Manager the grain commission business at Omaha, under supervision of A. H. Shultz, Pres.

"7.  (a) If his duties embrace the custody of cash, state largest amount likely to be in his custody at any one time.
        A. $10,000.
    (b) Also, the average amount of daily handlings.
        A. $5,000.

"9.  (a) If required to make deposits in bank, how often?
        A. Each day.
    (b) In what name are deposits kept?
        A. Farmers Union Grain Co.
    (c) Give name of depository.

          A. First Nat'l Bank, Omaha, Neb.

(d)  State approximate daily bank balances.

          A. $5,000.

(e) State approximate largest bank balances at one time.

          A. $10,000.

"11. To whom and how frequently will he account for his handling of funds, stock or securities?

          A. Once per month.

"12. (a) What means will you use to ascertain whether his accounts are correct?

          A. Personal audit by Pres. Shultz.

(b) How frequently will they be examined?

          A. Once per month or oftener.

(c) How frequently will an inventory of the stock be taken?

          A. Once per month or oftener.

(d) If applicant is a salesman or collector, are statements rendered to customers in arrears, and at what periods?

(e) If applicant is an insurance agent, state period when reports and settlements are required.

"13. When were his accounts last examined?

          A. August 20, 1917."

The general rule is that a statement in an application is a representation, rather than a warranty, unless made a warranty by express terms or otherwise so clearly referred to as to become a part of the contract and necessitate such a construction, or unless the language used in the contract clearly and unequivocally evidences the intent that it should be construed as a warranty. Answers to questions in an application for insurance are therefore to be construed as representations, as to which substantial truth in everything material to the risk is all that is required of the applicant, unless clearly shown by the form of the contract to have been intended as warranties. So statements by an applicant for insurance, which by the terms of the policy are made part of the contract with

148 NEBRASKA REPORTS. [Vol. 109

Farmers Union Grain Co. v. United States Fidelity & Guaranty Co.

the insurance company, are not to be regarded as warranties, unless the policy upon its face plainly declares that they shall be treated as such. 3 Joyce, Insurance (2d ed.) sec. 1891.

In the case of *Title Guaranty & Surety Co. v. Bank of Fulton*, 89 Ark. 471, it is said: "Now, if it had been the intention of the parties to make these statements in the 'employer's declaration' warranties, it should have been so stated. But the bond does not say that any of these statements is a warranty. It does not employ any language which says or can be construed to say that any of these statements is a warranty. If it had been so desired, the bond could have well stated that, if any of the statements made in the 'employer's declaration' was incorrect, then the bond should be void." The bond in the instant case does not make the declarations in the employer's statement warranties, and such a construction will not be placed upon them independently.

The foregoing rules of construction have been generally approved and followed by this court in deciding cases involving insurance, and the laws of insurance generally are applicable in the instant case.

A contract of insurance, where the insurer has received and retains the consideration, is to be sustained, if possible, and should not be defeated upon any ground which does not materially increase the risk. *Billings v. German Ins. Co.*, 34 Neb. 502; *Phœnix Ins. Co. v. Barnd*, 16 Neb. 89; *State Ins. Co. v. Schreck*, 27 Neb. 527; *Farmers & Merchants Ins. Co. v. Newman*, 58 Neb. 504; *Hanover Fire Ins. Co. v. Gustin*, 40 Neb. 828.

"Courts will construe policies of insurance more strongly against the party by whom the contract has been drafted, and who has had the time and opportunity to select, with care and ingenuity, and with a view to its own interests, the language in which the contract is couched." *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338. See, also, *Woodmen Accident Ass'n v. Pratt*, 62 Neb. 673; *Soehner v. Grand Lodge, Order of Sons of Herman*, 74 Neb. 399;

*Beber v. Brotherhood of Railroad Trainmen*, 75 Neb. 183; *Modern Woodmen of America v. Wilson*, 76 Neb. 344; *Harr v. Highland Nobles*, 78 Neb. 175; *Ætna Ins. Co. v. Simmons*, 49 Neb. 811.

For other cases dealing with the question of representations and warranties, see *Beeler v. Supreme Tribe of Ben Hur*, 106 Neb. 853, 184 N. W. 917, and note; *Kettenbach v. Omaha Life Ass'n*, 49 Neb. 842; *Ætna Life Ins. Co. v. Rehlaender*, 68 Neb. 284; *Goff v. Supreme Lodge Royal Achates*, 90 Neb. 578, 37 L. R. A. n. s. 1191; *Yonda v. Royal Neighbors of America*, 96 Neb. 730; *Modern Woodmen Accident Ass'n v. Shryock*, 54 Neb. 250.

Having adopted the above rules, then it is plain that this court desired to have the law as therein provided, and the legislature showed a like intention in passing section 3187, Rev. St. 1913, which is now section 7787, Comp. St. 1922.

We have decided that the declarations made in the employer's statement are representations, and we are now confronted with the question whether there was substantial compliance on plaintiff's part with the same. This being a question of fact and it having been decided by the jury as such under proper instructions, we adhere to the same, and this phase of the case is entitled to an affirmance. We are not at liberty under the general rule of this court to disturb the finding unless the jury are clearly wrong.

The defendant company cannot be heard in their desire to evade responsibility, which they solemnly entered into, and voluntarily took upon themselves the duties to do certain things for the purpose of inducing the plaintiff to accept it as a surety, and in this way guaranteed them that Borin would be honest and square and would perform his responsibilities in this manner. Borin turned out to be a defaulter and absolutely failed to do and perform the things which he actually assumed responsibility for. Defendant drew the bond, used the language to suit its purposes. By every rule of justice and fair dealing we hold

they are bound to be responsible for what they undertook. It was by reason of this position that the plaintiff company trusted fully that Borin would carry out to the fullest extent these duties, and by reason of that position in which the plaintiff company was, it fully believed in the terms and conditions of the bond that the defendant company assured them against all loss, and for which the defendant received pay. In this transaction the defendant assumed no other or different risk than that for which it received pay, and undoubtedly, as a matter of fact, the jury made that finding under proper instructions. Under the rules of this court, unless it is clearly wrong, we will not disturb it. The evidence and the instructions of the court fully sustain the finding of the jury. This court is committed to the doctrine that on a question of fact the jury are supreme. That is the American doctrine and no court will be heard to disturb it. We do not feel in this case that there is any occasion to doubt the validity and justice of this finding. A disturbance of it would be revolutionary and start the wheels to overturn our methods of seeking justice and enforcing fair dealing.

Appellant makes complaint that the alleged incorporation of the Borin Grain Company changed Borin's employment and put him in a relation to the bonding company which created greater risks and new responsibilities that were not provided for in the bond. We say in answer to this that the Borin Grain Company was a mere fiction in every sense of the word. It will be noted in the beginning that the defendant Borin, by the organization of this new company, in no way created a new or greater risk and had no other or different responsibilities than had already been provided for. The object and purpose of this new formation was simply to give the plaintiff a better opportunity to take advantage of Borin's acquaintance among grain men and to do business on the grain exchange. Borin held a seat on the grain exchange and in order to use it the change of the name of plaintiff company was made. It seems that a corporation could not hold a

membership according to the rules of the exchange.

One thing should be borne in mind, and that is that Borin could not become a defaulter and otherwise violate the conditions of his bond and be in any different relation to the plaintiff and defendant than he was in the beginning. We say, then, that from any angle you view the position he is in, the same situation is found, so far as the plaintiff and defendant are concerned, as originally. Then, there being no greater risk and no different position in regard to his business transactions than there was when he started, it necessarily follows that the insurance contract which the defendant entered into with the plaintiff is good now, the same as it was before any change was made. This, in short, is what the jury found on the facts, and we affirm it.

We next direct attention to the instructions given by the court. We have examined specifically each of the matters complained of and note that one proposition prevailed, and that was to elucidate the law applicable thereto, and, in our judgment, only such rules of law were submitted to the jury as cleared up the complications involved, and the court accurately and learnedly demonstrated to the jury those propositions only which were involved and difficult of understanding. We affirm the instructions and say there was no reversible error. From any view-point you look at this situation, one thing is evident, and that is that we have not changed an iota nor made any difference in the insurance contract which they entered into in the first instance.

It appears of record that counsel for plaintiff have already been allowed $1,000 for services rendered in district court. We think if we allow $500 for their services rendered in this court in addition, that will be considered compensatory and reasonable, and the allowance of the same is hereby ordered.

Reviewing all the reasons that we have heretofore given in our discussion, and in furtherance of justice and fair

dealing, it is our duty under the law and the facts to affirm this case.

AFFIRMED.