E. E. CABBELL, Respondent, v. MILWAUKEE ME-
CHANICS INSURANCE COMPANY, a Corpora-
tion, Appellant.*

Kansas City Court of Appeals, April 7, 1924.

1. **INSURANCE: Evidence Held to Justify Finding That Coals from
Exploded Hot Water Plant and Furnace Were Aflame When Blown
on Basement Floor and Thereby Caused Damage to Property by
Smoke and Soot.** Where hot water heating plant of insured ex-
ploded, blowing fire from furnace out on basement floor, evidence
*held* to justify a finding that at moment of their expulsion on the
floor they were aflame, even though they were no longer burning
with a flame when insured reached the basement, and from said
fire the loss and damage to insured's property arose, caused by the
smoke and soot.

2. ———: **What Constitutes Loss or Damage by Fire Within Usual
Terms of Policy, Stated.** To constitute loss or damage by fire, with-
in the usual terms of a policy, there must·be actual fire, one which
becomes uncontrollable, or breaks out from where it was intended
to be, becoming a hostile element, and a recovery may be had for
resulting losses or damages in regard to which there has been no
actual ignition, caused by smoke, soot or by heat, but where the

fire is one confined within its usual limits a recovery cannot be had for loss or damage caused thereby.

3. ————: Policy Held Broad Enough to Include all Fires However Originating and All Damages Arising Therefrom of Whatever Character. Where policy, by its express terms, insured owner against loss or damage to his buildings by fire, it was broad enough to include all fires, and to cover the damage arising from smoke and soot resulting from the explosion of a hot water plant.

4. INSTRUCTIONS: Instruction Held not Erroneous as Assuming That Fire was Thrown Out of Exploded Hot Water Plant, Thereby Taking Such Issue from the Jury. In an action on a policy of fire insurance as a result of fire thrown from a hot water heating plant by an explosion, an instruction submitting the issue as to whether fire was blown therefrom and became scattered over the basement floor, and whether smoke and soot arose therefrom and damaged the dwelling house of insured, and which stated no recovery could be had unless such fact existed, *held* not erroneous as assuming that the fire was blown out because of the omission of the words "if any" with reference to the fire, nor did the omission of said phrase take such issue from the jury.

*Headnotes 1. Fire Insurance, 26 C. J., Section 762; 2. Fire Insurance, 26 C. J., Section 429; 3. Fire Insurance, 26 C. J., Section 429; 4. Trial, 38 Cyc., p. 1664.

Appeal from the Circuit Court of Carroll County.—*Hon. Ralph Hughes*, Judge.

AFFIRMED.

*Franken & Timmons* for respondent.

*Fyke, Snider & Hume* for appellant.

TRIMBLE, P. J.—Plaintiff's suit is on a policy of fire insurance covering his dwelling, in which he seeks to recover the sum of $700 for loss and damage therein alleged to have been caused by fire.

The answer admitted the execution and delivery of the policy, but denied that plaintiff suffered a loss to

said dwelling by fire. Proof of loss was waived. After plaintiff's evidence was in, defendant demurred but was overruled, and then defendant rested, offering no evidence.

The jury returned a verdict in plaintiff's favor for $600. Defendant appealed.

The policy agreed to indemnify plaintiff against loss or damage by fire and lightning not exceeding the sum of $6000, from noon of November 22, 1917, to noon of November 22, 1922, on two-story dwelling house, including foundation, additions, now and hereafter attached, irremovable fixtures, plumbing, heating and lighting, apparatus, porches, storm doors and screens while therein or attached thereto. There were no exceptions with reference to fires caused by explosions.

On January 15, 1922, while the policy was in force, the heating plant in said dwelling exploded and the damage sued for arose.

Plaintiff had a hot water heating plant in his house. In the basement was the heater or furnace around which was a hood or jacket containing water so arranged in sections as that the water could circulate therein around through the jacket and next to the fire where, becoming heated, it would rise through pipes and pass through radiators warming the house and then return to the jacket about the fire, there to be heated again.

Owing to a failure of the valves into the expansion tank to work properly but remained tightly closed, the heater exploded and an oblong piece was blown out of the front of the heater near the door. This hole, thus made, was merely in the outer shell of one of the sections of the jacket and the opening did not penetrate into the fire chamber. The force of the outrushing stream and water threw down plaintiff's son, who was in the basement at the time, and blew him several feet. As soon as he could he got out of the basement and went upstairs. In a few moments later a second explosion occurred, this time at the back end of the fire chamber,

and the force of this explosion blew practically all of the fire out of the furnace into the basement. At the time of the explosion, the furnace was full of burning Richmond soft coal. Live coals, from the size of a man's double fist down to small particles, were scattered about over the basement floor. Some of them were blown thirty feet from the furnace. There was a bushel or a bushel-and-a-half of coal in the furnace when the explosion occurred. There was a dirt floor in the basement, so that nothing pertaining to the house caught fire, but the smoke, soot, and possibly some ashes, permeated the house and damaged the walls, causing the loss sued for.

There is no doubt but that the coals scattered over the basement floor were live coals, though appellant appears to make some point that they were not "blazing." Plaintiff testified positively that the steam did not put out the fire, and though he first said the chunks of coal were smoking and blazing and then afterwards, on cross-examination, said he "wouldn't say there was any blaze to them," yet this, of course, was when he got down into the basement after the second explosion. While we are not able to perceive what difference it would make whether the fragments scattered over the floor were flaming or were merely live coals of fire, yet the jury could well find from the evidence that at the moment of their expulsion on the floor they were aflame, even though they were no longer burning with a flame when plaintiff reached the basement. The fact that almost all of the fire was blown out into the basement, that the steam did not put out the fire, and that the smoke and soot penetrated through the floors into the house, would clearly indicate that when the second explosion occurred it was *fire* that was scattered over the basement floor; and from this fire the loss and damage arose, caused by the smoke and soot.

To constitute loss or damage by fire, within the usual terms of a policy, there must be actual fire, and it "must be a hostile fire, that is, one which becomes uncon-

trollable *or breaks out from where it was intended to be,*
and becomes a hostile element, and where there is such
a fire, recovery may be had for resulting losses or dam-
ages in regard to which there has been no actual ignition,
such as a loss or damage *caused by smoke and soot, or
by heat.* Where the fire is a friendly one, that is, one
which is employed for the ordinary purpose of lighting,
heating, or manufacturing, *and is confined within its
usual limits* . . . it is not a fire within the usual
terms of a policy and recovery cannot be had for loss or
damage caused thereby, such as damage caused by
. . . smoke or soot." [26 C. J. 340.] (Italics ours.)
"The policy, by its express terms, insured the plaintiff
against loss or damage to his buildings by fire. The
contract is broad enough to include all fires, however
originating and all damages arising therefrom of what-
ever character." [Renshaw v. Missouri, etc., Ins. Co.,
103 Mo. 595, 601-2.] It would seem that the contract in
the case at bar is broad enough to cover the damage aris-
ing from the fire shown herein.

In Cannon v. Phoenix Ins. Co., 110 Ga. 563, insured
failed to recover because he was required to furnish, as
a condition precedent, proofs of a loss within the terms
of the policy, but failed to do so, his proofs merely show-
ing that the damage arose merely from smoke emanating
from a defective stovepipe, the fire not escaping from the
stove where it was intended to be. The court said, how-
ever on p. 567, "If a fire should break out from where
it was intended to be, and become a hostile element by
igniting property, although it might not actually burn
the property insured, yet if it caused injury thereto by
smoke or heat, or other direct means, damages would be
recoverable." While this might seem to imply that there
must be a communication of the fire to something outside
of the stove, yet we think it means merely that fire must
exist outside of the receptacle intended for it, so that such
fire becomes a hostile agent, either through ignition of
other property or from the smoke or soot arising from the

escaped fire. In Connor v. Queen Ins. Co., 140 Wis. 388, it is held that where a furnace merely became overheated and charred certain wood outside of it, the smoke from which caused the damage sued for, it was a loss or damage by fire within the meaning of the usual policy contract. If live burning coals were ejected upon the floor of the basement, then such fire was a hostile element that had escaped from its place of confinement and from which damage could arise either by consuming plaintiff's property or by damaging it by smoke or soot. In either case, there would be a loss or damage by fire.

In Way v. Abington Fire Ins. Co., 166 Mass. 67, the soot in the chimney caught fire, and, the chimney becoming choked, the soot and smoke entered the room, causing the damage sued for. It was held that the fire escaping from the stove to the chimney was out of the place intended for it, as the chimney was merely to conduct the products of combustion, and hence the fire there was a hostile element and the loss was within the policy.

In Wood on Ins. (2 Ed.), sec. 103, the rule is stated to be that the insurer is not liable for the consequences of a fire employed by insured for heating purposes "so long as the fire itself is confined within the limit of the agencies employed," but that there must be actual ignition outside of the agencies employed, not purposely caused by the insured. The live coals thrown out of the furnace by the force of the explosion would, in our view, constitute actual ignition outside of the furnace, so as to come within the terms of the above rule.

The case of Austin v. Drewe, 128 Eng. Rep. 1104, was where sugar refiners, having a register to close the chimney at night and keep as much heat as possible in the building, built a fire next morning, forgetting to open the register, whereby sparks and smoke got out into the rooms, and the increased heat slightly blistered the walls and discolored the sugars. The report states "there was no fire in the building that ought not to be there" and, as said in Connor v. Queen Ins. Co., supra, commenting on

this case, the "flames were confined within the stove and flue and no actual ignition took place outside thereof." Hence we do not regard the case of Austin v. Drewe, as being in point.

In 14 R. C. L. 1216, sec. 396, it is said: "A distinction is usually drawn by the courts between a friendly fire and a hostile fire, and it is held that if fire is employed as an agent, either for the ordinary purposes of heating the insured building, for the purpose of manufacture, or as an instrument of art, the insurer is not liable for the *consequences* thereof, so long as the *fire itself is confined within the limits of the agencies employed.*" (Italics ours.)

If, as apparently seems to be the case, contention is made that the evidence that the fire was blown out of the furnace by the explosion is contrary to well-known physical laws or the common experience of men, manifestly such contention cannot be upheld.

Some objection is made to plaintiff's instruction No. 1, embodying his case. In substance, it told the jury that when fire is confined in the place where it ordinarily burns, as in a stove or furnace, and smoke or soot escapes and damages the building, such loss is not a damage by fire within the meaning of a fire insurance policy, and for such damage an insurance company is not liable; but if such fire should escape or be thrown out of its usual place of burning, and after being so thrown out or escaping, smoke and soot arise therefrom and damage the building, then such loss is a damage by fire within the meaning of an insurance policy. Therefore, if they found that there was fire in the heating plant and that said fire was thrown out of said heating plant by an explosion and said fire became scattered over the basement, and that after said fire was thrown out or escaped into said basement, if they found it was so thrown out or escaped, smoke and soot arose therefrom and damaged the dwelling house of plaintiff, then verdict should be for him. And if they found for plaintiff, they should assess his

damages at such sum as would equal the difference, if any, in the fair cash value of plaintiff's dwelling house immediately before and immediately after such fire, if any, caused by the smoke and soot arising from the fire on said basement floor after the same had been thrown out of or fell from said heating plant, not to exceed $700 and not to exceed what it would cost to repair or replace said dwelling house in the condition same was in immediately before such fire.

From what has been said heretofore there was evidence to support the instruction. It clearly and explicitly submitted to the jury the question whether fire was thrown out of the furnace and became scattered over the floor, and whether, after it was thrown out "if you find it was so thrown out or escaped," smoke and soot arose therefrom and damaged the building. And in giving the measure of damages, the reference is to "such fire, if any." Thus the jury were clearly told they should find such fact before they could find for plaintiff and that, unless such facts existed, there was no liability; and, except in the last few lines of the instruction, every reference to the fire was followed by the words "if any" or words of similar import. The jury could not have understood the instruction to assume that fire was thrown out, and clearly it did not assume such fact. They were told so explicitly that such was a question for them to settle, that the addition of the phrase "if any" to the final words of the instruction would not have enlightened them further nor did the omission thereof in the last few lines take such necessary issue from them. [Yarde v. Hines, 209 Mo. App. 547, 554; Costello v. Kansas City, 219 S. W. 386, 391; Warnke v. Leschen, etc., Rope Co., 186 Mo. App. 31, 45.]

The judgment is affirmed. All concur.