L. L. CORYELL, APPELLANT, V. OLD COLONY INSURANCE COMPANY ET AL., APPELLEES.

FILED APRIL 5, 1929. No. 26547.

*Sterling F. Mutz,* for appellant.

*C. C. Flansburg, contra.*

Heard before Goss, C. J., Dean, Good, Thompson, Eberly and Day, JJ., and Redick, District Judge.

Goss, C. J.

This was an action to recover on fire insurance policies. A jury was waived and the case was tried to the court. Judgment was entered in favor of the defendants. Plaintiff appealed.

In his petition plaintiff alleged that he was the owner of the dwelling-house in question; that he insured it by the policies set out; that he performed all the terms and conditions to be performed on his part; that while the insurance was in effect he "suffered a loss by fire, said property having been burned and smoked to the plaintiff's damage in the sum of $1,000 ;" and that upon notice of loss the defendants waived proof of loss, denied liability and advised plaintiff to bring suit.

The defendants demurred to the petition in the first paragraph of the answer; and in the second and last paragraph thereof, without waiving the demurrer, the defendants admit their corporate existence, admit their right to do business in Nebraska, admit the issuance of the policies, and deny each and every other allegation contained in the petition.

On the trial the parties stipulated in writing some facts definitely, and then stipulated that if plaintiff were called as a witness he would testify to certain things fully set out, and that these things should be given the same force and effect as if he were sworn and testified. The written stipulation was received in evidence without objection. Among these things so stipulated to be considered as testified to by the plaintiff it appeared: That the house was heated by a furnace installed for that purpose and having an oil burner, controlled by a thermostat set at 73 degrees and not changed at any time under consideration; that about midnight on April 14, 1926, plaintiff went to his furnace in the basement, inspected it and found it was working properly and made no adjustment of it; that he

awakened about 5 o'clock in the morning of April 15, observed smoke, soot and oil therefrom over the house, went to the furnace to ascertain the cause and "found that the furnace door, which he had left closed upon retiring about midnight, had been opened by some process in the absence of plaintiff, the cause of said door being open being unknown to plaintiff;" that the flames from the oil burner were shooting out of the open door from three to five feet, striking the asbestos covered heat pipes near the ceiling of said basement room, "blackening and charring the covering on the heat pipes;" that with an iron bar plaintiff shut the furnace door; that the plaintiff then turned off the oil and the fire subsided; that the soot, smoke and oil therefrom which had accumulated over the rooms of the house required redecoration of the house and time and labor; that the damage was in the sum of $1,000; and that the flames "did not ignite or burn any other part of the house than the asbestos covering on the pipes" aforesaid.

Plaintiff was present at the trial and testified supplementing his testimony given in the stipulation. On direct examination he testified that the furnace door was closed when he retired between midnight and 1 o'clock.

On cross-examination he testified that he always opened the furnace door at night to inspect the furnace and that he did so on this occasion. The door fastened by a "lip on the edge of the door that traveled up an inclined plane and dropped in a slot." He thinks the lip was in the slot when he left it that night. On further cross-examination he answered in the affirmative a question framed to show that he had no independent recollection of closing the door, only because he always did so and thinks he did it that night. He gave his theory that the door was opened by some force from the inside. His judgment was that the volume of flame was greater when he shut the door in the morning than at night, greater than when it was burning around the ignition plate. On redirect examination he testified that he was very sure he closed the door at

night. There was no expert testimony nor any evidence based on experience or observation to indicate that such a furnace door might be opened accidentally from the inside or by any force operating from the inside. On cross-examination plaintiff admitted that nothing was burned in the furnace room, stating that it was fireproof.

The defendants claim (1) that the damage was caused by the plaintiff's own negligence in leaving the door open; and (2) that the fire was a "friendly" fire and not a "hostile" fire.

The general rules of pleading relating to contracts apply to actions on insurance contracts. It was incumbent on plaintiff to allege that he performed all the terms and conditions precedent on his part. 26 C. J. 492, sec. 693. This he did. "The general requirement as to averring performance of conditions and warranties relates only to affirmative warranties and conditions precedent; it is not necessary to negative the occurrence of facts which would constitute a breach of a promissory warranty or condition subsequent." 26 C. J. 493, sec. 693; 14 R. C. L. 1431, sec. 591. "He need not as. a rule. anticipate affirmative defenses either by positive or by negative allegations." 26 C. J. 496, sec. 701.

No negligence of plaintiff, either by reason of leaving the furnace door open or otherwise, was pleaded by the defendants in their general denial. The judgment of the trial court is general. It contains no specific findings of fact, nor does the bill of exceptions show any opinion or statement from the court as to the ground on which he rendered judgment. In view of the pleadings and the rules ordinarily governing them and of the general trend of the evidence in the case, we infer that the judgment was based upon a conclusion of the trial court that, under the law and the evidence, the defendants were free from liability because the fire had its origin in the furnace and because this particular situs and this particular fire constituted the source from which the damaging elements emanated. However, in stating that negligence was not

pleaded as a defense, we do not wish to be understood as eliminating the proper force of the evidential facts relating to the furnace door being open when the damage was done, and that this was the means by which the fire, smoke, and other elements complained of, reached the interior of plaintiff's house, instead of going up the chimney.

In policies insuring against "direct loss or damage by fire," as was the case here, an actionable fire is frequently called a "hostile fire" to distinguish it from a nonactionable fire, which is called a "friendly fire," that is, a fire intentionally built within a stove or furnace or in some other proper place contemplated by both the insured and insurer. The general rule seems to be that the insurer is not liable for the consequences of a friendly fire so long as the fire itself is confined within the limits of the proper agencies employed for the purpose; and if a friendly fire get out of bounds so as to ignite property insured and thus to damage it, or so as to cause a second fire with consequent damage by reason of such secondary fire, it will be considered a hostile fire, for whose damages the insurer is liable. 26 C. J. 340, secs. 429, 430; 14 R. C. L. 1216, sec. 396; 6 Cooley's Briefs on Insurance, 4933-4935.

In *Way v. Abington Mutual Fire Ins. Co.*, 166 Mass. 67, where the damage was caused by the soot in a chimney becoming ignited, it was called a hostile fire. In the opinion the court cited the English case of *Austin v. Drew*, 4 Camp. (Eng.) 360, often cited as a leading example of a fire held to be friendly. Sugar was damaged by excessive heat, but the fire causing this heat remained in the place provided for it. This latter case is very thoroughly analyzed and discussed by that eminent jurist Caleb Cushing. We content ourselves, as to *Austin v. Drew*, with a reference to Judge Cushing's opinion in *Scripture v. Lowell Mutual Fire Ins. Co.*, 10 Cush. (Mass.) 356. This later case has been cited to us. We do not find it very analogous to the case at bar. A boy took a cask of gunpowder to the attic of the insured house and fired the gunpowder with a match. It caused damage both by explosion and by combustion.

On the theory that the ignition of the gunpowder was the proximate cause of both the combustion and the explosion, the court held that the damages for both were covered by the insured. This ignition patently was hostile.

*Cannon v. Phœnix Ins. Co.*, 110 Ga. 563, was a case arising when the insured was "arranging a stove" on the ground floor, the pipes of which extended through the ceiling and through the second story of the building. These pipes disengaged at the ceiling of the second floor. When a fire was built in the stove, smoke and soot escaped in the second story and damaged goods there. It was held that it was a friendly fire and that damages caused by water used in cooling a portion of the ceiling heated by the pipe but not actually ignited could not be recovered under the policy covering "all direct loss or damage by fire."

In *Lavitt v. Hartford County Mutual Fire Ins. Co.*, 105 Conn. 729, damage was done to an insured house and contents by reason of a defect or of defective action of an oil burning furnace. As in the instant case, as soon as it was discovered and the oil was turned off, the fire ceased. The court was bound by the finding of the trial court that there was no actual ignition of a board attached to a ceiling in the cellar because the board about which the oral testimony was conflicting had not been preserved for review. The plaintiff had testified that this board was aflame when he entered the cellar. The court held that "fire" as used in the policy "was not restricted to its technical or scientific meaning, but was intended in the sense of ignition, including its action in charring, scorching, cracking, smoking, or heating, though no flame be seen." By reason of the state of the record, the fire was held to be a friendly fire and plaintiff's claim of error was denied.

In *Hansen v. LeMars Mutual Ins. Ass'n*, 193 Ia. 1, plaintiff lit the oil burners under a boiler of water to heat it for the family washing and went back to bed. An hour later he was awakened by the smoke and soot which filled the house. He averred that the flames extended nearly to the top of the boiler and emitted in great quantities the smoke

and soot complained of. He turned down the burner and the fire went out. There was no evidence that there was any leak or that the oil in the tank had ignited. Held, that plaintiff could not recover.

The plaintiff relies on *O'Connor v. Queen Ins. Co.*, 140 Wis. 388. Plaintiff's servant built in the furnace a fire of material highly inflammable and not intended to be used. It caused intense heat and great volumes of smoke and soot to escape through the registers to the rooms and thus damaged the property insured. While the syllabus states there was no ignition outside the furnace, the opinion says that "around the mop boards was burned and the mop boards blistered; the wall paper charred and burned and the chimney cracked from the excessive heat;" and "the fire was extraordinary and unusual, unsuitable for the purpose intended, and in a measure uncontrollable, besides being inherently dangerous because of the unsuitable material used." It was held to be a hostile fire. Judge Marshall filed a dissenting opinion, reviewing many cases and expressing the opinion that the majority opinion had gone "beyond any substantial support in the books." The majority of the Wisconsin court felt justified in the opinion, probably because of the "extraordinary and unusual" development of what otherwise might even by them have been found to be a friendly fire. The opinion seems out of step with the general trend. It was not followed in *Hansen v. Le-Mars Mutual Ins. Ass'n*, 193 Ia. 1, but the opinion there contents itself by quoting the Wisconsin court's description of the "extraordinary and unusual," "in a measure uncontrollable, besides being inherently dangerous," fire. In 6 Cooley's Briefs on Insurance, 4933, in discussing the rule that damage, without ignition, resulting from a friendly fire, is not covered by the ordinary policy, the author refers to the *O'Connor* case alone as an example where "the rule above stated is materially qualified" and expressly refers to the dissenting opinion of Judge Marshall therein.

Appellant cites *City of New York Ins. Co. v. Gugenheim,*

7 S. W. (2d) 588, decided by court of appeals of Texas, July 14, 1928. The facts recited in that case show that the oil which was used as fuel in the furnace escaped into the air jacket or compartment outside of the combustion chamber, and was there ignited when the fire in the furnace proper became hot enough to heat the air sufficiently in the air compartment. "The smoke and soot from the oil burning in the air compartment went through the air vents into the house and damaged the furniture, fixtures and walls to the amount agreed upon." The opinion cites and discusses numerous cases illustrative of the distinction between a friendly and a hostile fire and follows what it seems to consider the proper rule, that this secondary fire was a hostile fire.

Appellant also cites and relies on *Pappadakis v. Netherlands Fire & Life Ins. Co.*, 137 Wash. 430, "where fire escaped from a crack in the top of a bakery oven, until the flame heated an automatic sprinkler head, releasing and throwing a large quantity of water over the bakery and damaging the bakery and stock therein." The court held that the fire was a hostile fire on the expressed conclusion that it was "a fire out of place." Of course, the fact that the fire escaped from an accidental crack in the top of the oven would seem to differentiate the facts to that extent from an escape of fire from an open furnace door, as in the instant case. The opinion discusses *Cabbell v. Milwaukee Mechanics Ins. Co.*, 218 Mo. App. 31, also cited by appellant, and describes it as a case where a furnace in a basement of a dwelling exploded and threw out upon the basement floor live chunks of coal, and it was there held that the live coals, thus thrown out from the furnace, would constitute actual ignition outside of the furnace so as to come within the terms of the rule stated. We have read the *Cabbell* opinion and are unable to say whether the policy was like that in suit here or not, but there is an intimation in the syllabus that it was a broader policy. The syllabus contains this: "Where a policy, by its express terms, insured owner against loss

or damage to his buildings by fire, it was broad enough to include all fires, and to cover the damage arising from smoke and soot resulting from the explosion of a hot water plant."

To the extent, if any, that the cases cited and heretofore discussed have not been distinguished or are not distinguishable, we do not regard them as of authority to modify what we conceive to be the settled rule applicable to the case under review. We are of the opinion that the correct rule to be applied to the particular situation is this: Where a policy of insurance covers "direct loss or damage by fire" and the loss and damage for which recovery is sought was occasioned by soot, smoke and volatilized oil accompanying them and escaping from the open door of an oil burning furnace at all times operated and controlled by the insured alone; where the flames from the furnace extended outside the open door thereof but did not ignite or burn any of the property insured and were extinguished as soon as the door was closed and the oil turned off; and where it is not shown that the furnace door was opened accidentally, by an explosion or otherwise; it should be held that the loss and damage was not contemplated by the contract of insurance and the insured cannot recover.

Moreover, in this case a jury was waived and the matter was tried to the court. No specific findings of fact were requested or made but the court found generally for the defendants. The inference is that he found, as we have found, the issue of fact as to the unexplained open door in favor of the defendants. This finding has the same force and effect as if found by a jury. We may not overturn it even if we might have found differently, unless it was clearly against the preponderance of the evidence.

For the reasons stated in the opinion, the judgment of the district court is

AFFIRMED.

Good, J., dissenting.

I am unable to concur in the majority opinion. The facts disclosed by the record show that the fire was hostile and not friendly, and plaintiff was therefore entitled to recover.

Redick, District Judge, concurs in this dissent.

The following opinion on motion for rehearing was filed February 28, 1930.

Heard before Goss, C. J., Rose, Dean, Good, Thompson, Eberly and Day, JJ.

Thompson, J.

This is an action based on certain fire insurance policies issued to the plaintiff, appellant, by the defendants, appellees, respectively, to recover $1,000, a reasonable attorney's fee and costs, for loss and damage caused by fire, smoke, and soot, to the property covered by such policies. The issue was as to whether the fire, which is claimed to have given rise to such alleged right of recovery, is one which comes within the provisions of the policies. The trial court determined it did not, to reverse which finding the plaintiff appeals.

It is our conclusion from an examination of the pleadings that they do not put in issue negligence or any wrongful act on the part of the plaintiff; that the petition is in usual form in such cases, and is not vulnerable to the demurrer interposed by way of the answer. It might here be

said, further, that we have examined the evidence and conclude that, even if the pleadings had presented the issue of negligence or wrongdoing on the part of plaintiff, the same would not find support in the record. Also, we are convinced that, if the fire was one covered by the policies, the plaintiff is entitled to recover of the defendants the sum of $1,000, together with interest thereon, attorney's fees and costs, as prayed. As to whether or not the fire was one coming within the scope and intent of the policies depends upon the proper application of the law to the facts reflected by this record, which are, in substance, as follows: There are four policies involved, all in Nebraska standard form, and, so far as material for our consideration, covered the dwelling house of plaintiff and the household and personal effects therein contained. Three of such policies insured against "all immediate and direct loss or damage by fire," and the fourth against "all direct loss or damage by fire." The dwelling was of two-story and basement construction, the basement being fireproof. On the date in question this dwelling was equipped with a hot air heating apparatus, commonly known as a Quaker furnace, with hot and cold air pipes leading to all parts of the house. In such furnace there was installed a Sun gravity oil burner, supplied with an automatic thermostat, trip bucket, and other ordinary equipment. The specific gravity of the oil used was 38-40 Baume. In this furnace the oil is fed on a hot plate resting at the base of the firebox, where it vaporizes and then ignites; and thus the necessary heat is generated, and by means of the hot air pipes is distributed to the different parts of the building, as is, in a somewhat similar manner, the cold air through the cold air pipes. At about 12 o'clock on the night in question, plaintiff, as was his custom, went to the basement, opened the coal door of the furnace (in size about 12 by 16 inches), glanced in, observed nothing unusual in its operation, closed the door, which fastened by a "lip on the edge of the door that traveled up an inclined plane and dropped in a slot," and then retired to his room in the second story. Early the follow-

ing morning he awakened, arose, and observed smoke, soot and oil over the rooms and personal effects. He then went to the basement to ascertain the cause, and on arriving found the door of the furnace open, which he had closed at midnight, and which had been opened by some process unknown to him in his absence. The flames, oil, soot and smoke from such oil burner were shooting out of the furnace door, to its full width, a distance from the door of from three to five feet, striking the ceiling and the asbestos-covered heat pipes near the ceiling, blackening and charring such covering. Thereupon plaintiff procured an iron bar, closed the furnace door, and turned off the oil, and on his having done so the fire subsided. The aforementioned smoke, soot, and vaporized oil permeated the entire house. The flames shooting out of the door were greater in volume than those which plaintiff had seen in the firebox at midnight. While plaintiff testified that he did not hear any explosion, it was his belief that force from the inside of the furnace opened the door, because he was sure he closed the door before retiring. No part of the furnace was broken. The loss and damage sustained by plaintiff, by reason of the foregoing, were as by him alleged in his petition. While others of the household had access to the furnace, plaintiff was the only one who exercised such privilege.

Counsel for these respective parties have, with discriminating care, both by way of authorities cited and argument, presented their views of the issues involved. It is the contention of defendants that the base of the fire in fact rested upon the evaporating plate, and however far it may have extended from this plate, even as in this case, it is a "friendly" fire, and that the combustion all occurred inside the furnace, where it was intended it should. The plaintiff insists that the fire was "unfriendly" or "hostile" from the point where it passed from the furnace, if not from the time it passed from the heated plate in the furnace, and that combustion occurred outside the furnace, and at a place where it was not intended it should. A careful

consideration leads us to conclude that these contracts of insurance do not cover a loss or damage occasioned by fire, smoke, or soot, so long as the fire is kept confined in the furnace, the place intended; that while it thus remains it is a "friendly" fire, and if damages are caused by it while it is so confined recovery therefor cannot be had. This the parties seem to concede. Here, however, their contentions diverge. We take the reasonable view to be that when it is admitted, or clearly proved, that the loss and damage were caused from and by fire, after it had passed from the place of its intended confinement, as in this case, then and by reason thereof the insurance company is liable for loss and damage, not only that caused by burning, but from soot and smoke as well. The fire causing the damage having passed from the place where it was intended to be, it thus became a "hostile" element, and so remained until extinguished.

A reasonable deduction from the facts admitted and proved, including the damaged condition of the rooms and personal effects, is that that which was rushing out of the furnace door, to its full width, called "flames," was laden with soot and vaporized oil, and as these materials carried by the flames passed through and out of the door, the outer rim of such flames, on meeting the air in the furnace room, ignited such materials and produced combustion, which process continued from the time the door opened until the fire was extinguished.

We should remember in this consideration that this court has uniformly held: "Courts will construe policies of insurance more strongly against the party by whom the contract has been drafted, and who has had the time and opportunity to select, with care and ingenuity, and with a view to its own interests, the language in which the contract is couched." *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338. Numerous cases bearing upon this subject will be found collated in *Farmers Union Grain Co. v. United States Fidelity & Guaranty Co.*, 109 Neb. 142.

This instant case is not distinguishable on any reason-

able hypothesis from that of *Cabbell v. Milwaukee Mechanics Ins. Co.*, 218 Mo. App. 31, wherein it was held: "To constitute loss or damage by fire, within the usual terms of a policy, there must be actual fire, one which becomes uncontrollable, or breaks out from where it was intended to be, becoming a hostile element, and a recovery may be had for resulting losses or damages in regard to which there has been no actual ignition, caused by smoke, soot or by heat, but where the fire is one confined within its usual limits a recovery cannot be had for loss or damage caused thereby." It cannot consistently be said that the fire here in question was "confined within its usual limits," nor that the facts in this case fail to bring it within the rule announced in the first part of the above quoted holding.

The conclusions hereinbefore expressed find support in *O'Connor v. Queen Ins. Co.*, 140 Wis. 388, and *Pappadakis v. Netherlands Fire & Life Ins. Co.*, 137 Wash. 430.

Thus, we are impelled to conclude that the fire in question was "hostile," and not "friendly," and, being "hostile," was covered by the policies in suit; further, that the judgment of the trial court is without support in the evidence, and contrary to the law applicable thereto. There is allowed plaintiff as attorney's fee $150 in this court, and $150 in the trial court.

Our previous holding in this case, reported, *ante*, p. 303, is set aside, and the judgment of the trial court is reversed and the cause remanded, with directions to enter judgment for the plaintiff in harmony with this opinion.

REVERSED.

Goss, C. J., dissenting.

I dissent. My views may be found in the first reported opinion in this case, *Coryell v. Old Colony Ins. Co.*, *ante*, p. 303.

The opinion of the present majority contains features, quite aside from the mere fixing of liability on facts like those involved here, that seem to be pregnant with trouble in future cases. The first point of the syllabus is very gen-

eral, but holds this fire to have been a "hostile" fire. But in the opinion appears this conclusion:

"The fire causing the damage having passed from the place where it was intended to be, it thus became a 'hostile' element, and so remained until extinguished."

This might be a correct proposition if the facts justified it; but in this case it is equivalent to saying that whenever any fire reaches outside the immediate receptacle in which it was intended to be and any damage is done by fire, smoke, oil, or soot, it is a "hostile" fire as that term is defined also in the second point of the syllabus. The opinion finds, as "a reasonable deduction from the facts admitted and proved," just when and how the fire became an actionable fire under the policy. It says in effect that, as long as that which was called "flames" was in the furnace, it was a "friendly" fire, but when it got outside of the furnace door, laden with soot and vaporized oil, and came in contact with the air in the furnace room, "the outer rim of such flames" ignited the soot and vaporized oil and produced combustion. Thus, according to this conclusion of the opinion, was born a "hostile" fire, and it carried oil, smoke, and soot from the furnace throughout the house. This of course was stated in an attempt to show from the evidence, in compliance with what has always been the law in nearly every jurisdiction, that there must be a second fire before there can be induced "hostile" fire. One need not be a scientist to know that the soot and vaporized oil here were the result of imperfect combustion on the plate inside the furnace; and that the soot once formed would not burn by contact either with the air or with fire outside the furnace. The evidence shows that the fire continued to come out of the furnace until plaintiff shut it off. This ended both fires. Until then, according to the opinion, the center of the column of fire coming out of the furnace door and reaching up to the pipes must have been a "friendly" fire, but the "outer rim" of this column was a "hostile" fire. This explanation seems fantastic.

There is no evidence nor any presumption that any va-

porized oil consumed outside of the furnace produced any soot. We know that the flames did not ignite the asbestos covering of the pipes outside the furnace. It must be concluded that there was no secondary or hostile fire and that any unconsumed soot and vaporized oil was taken out of the furnace by a "friendly" fire, as that term has always been understood, except in the one case cited by the present opinion: *O'Connor v. Queen Ins. Co.*, 140 Wis. 388. On such facts as are present here that case stands alone, so far as I know. The dissenting opinion therein follows the almost unanimous rule in England and the courts of this country. The two other cases relied on, *Cabbell v. Milwaukee Mechanics Ins. Co.*, 218 Mo. App. 31, and *Pappadakis v. Netherlands Fire & Life Ins. Co.*, 137 Wash. 430, are discussed in the former opinion in this case.

Unless controlled by statute, insurance contracts should be ruled by the same principles as any other contracts. The damage to plaintiff's property makes a strong appeal, but it appears that the decision goes contrary to principle and weight of authority. Whenever a court extends the rules to allow a recovery, it makes trouble for the future. It seems to me the opinion does just this.

EBERLY and DAY, JJ., concur in this dissent.