DAVID SWERLING *vs.* CONNECTICUT FIRE INSURANCE CO.
SAME *vs.* THE HOME INSURANCE CO.

JULY 23, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

CONDON, J. These are civil actions pending in the superior court of this state for the counties of Providence and Bristol and being at issue on their merits, and the parties having filed in the clerk's office of said court agreed

statements of facts, said actions have been certified to this court in accordance with the provisions of section 4, chapter 348, general laws 1923.

The question of law raised by the agreed statements of facts involves the damage done to a rug by a lighted cigarette, which rug is part of a lot of household personal property belonging to the plaintiff and insured under two policies of fire insurance. The specific question raised is whether a lighted cigarette lying on a rug directly beneath an ash tray or smoking stand, so-called, is a fire within the meaning of that term as used in the standard fire insurance policy of the state of Rhode Island.

The policies issued to this plaintiff were in standard form and insured him against "all direct loss or damage by fire, except as hereinafter provided." Damage done by a lighted cigarette is not expressly excepted by any proviso in the policies. The parties are agreed that while said policies were in full force and effect, the plaintiff observed the smouldering ashes of a lighted cigarette which were lying upon a rug and beneath a smoking stand or ash tray; that upon removing the ashes, it was found that the nap of the rug had been destroyed over an area about one and one half inches long and one half inch wide. The total damage is $36.

The defendants contend that this damage is not covered by the policies and that the plaintiff must prove that his damage is the result of a fire separate and distinct from the burning cigarette itself. On the contrary, the plaintiff says that the lighted cigarette was a hostile or unfriendly fire and that damage to the rug from the fire in the cigarette is recoverable even without showing that there was a separate and distinct fire in the rug.

The parties have been unable to find any case identical with the instant case decided by any court of last resort and so it would appear that this is a matter of first impression. The defendants urge, however, that while the facts are novel, the case is clearly ruled by the principles laid

down by this court in *Solomon* v. *United States Fire Insurance Co.*, 53 R. I. (1933) 154. In that case a building was heated by an oil-burning furnace in the basement. The smoke pipe in the rear of the furnace connecting it with the chimney had fallen away from the furnace, permitting dense smoke and flame to issue therefrom. The fire was controlled by a thermostat on the first floor. When this was shut off, the fire in the furnace at once went out. There was no ignition of any part of the building or its contents. All the damage done was by smoke and soot. The court found that there was only one fire which was intentional and within the place where it was intended to be and held, therefore, that no recovery could be had for the damage resulting solely from that fire.

The court applied the rule laid down in the leading English case of *Austin* v. *Drew*, 4 Camp. 360, where it was said, as there was no fire, except in the stove and the flue, as there ought to have been, and the loss was occasioned by heat, there could be no recovery. It was further said by GIBBS, C. J., in that case, that the fire was never excessive and always confined within its proper limits and that, had the fire been brought out of the flue and anything been burned, the insurance company would have been liable. This is the fundamental reason of that decision, and it has been generally followed by the courts of this country. The Meaning of Fire in an Insurance Policy, 24 Harvard Law Review, 119.

We think the rule laid down in *Austin* v. *Drew*, *supra*, is the correct one, but the difficulty in the instant cases is to determine whether or not the facts of the cases are sufficiently analogous to bring them within the rule. All of the cases which have applied the doctrine of *Austin* v. *Drew*, *supra*, including our own case of *Solomon* v. *United States Fire Insurance Co.*, *supra*, had to do with a fire in a furnace or some other receptacle intended for it. In the instant cases we have a special and peculiar fire, a lighted cigarette, not intended to be confined and burned in any

fire-resisting container, such as a furnace, but to be burned and consumed while held by the person smoking it. To be used for the purpose for which it was lighted, the cigarette cannot be .confined in any fire-resisting receptacle. Only if it is to be laid aside can it be placed in such a receptacle, and the commonly used container under such conditions is a smoking stand or ash tray.

To bring themselves within the rule of *Austin* v. *Drew* and *Solomon* v. *United States Fire Insurance Co.*, *supra*, the defendants say in their brief that: "In the *Solomon* case the damage was caused by a fire intentionally lighted within the furnace; in the cases at bar the damage was caused by a fire intentionally lighted within the cigarette. In both instances we have a friendly fire. In other words, there is no evidence that any fire existed outside of the cigarette. All that appears is a charring or scorching of the rug resulting in the destruction of the nap."

This argument will not stand analysis. It is not sufficient to say that the only fire was in the cigarette and hence where it was intended to be. The cigarette was not the container of the fire. It was composed of tobacco and container, and both were burning. It was the fire itself. The whole cigarette was as much the matter to be consumed as the coal or oil in a furnace. A person desiring to smoke a cigarette lights one intending that both the tobacco and wrapper shall be consumed, or partly so, in the act of smoking. The fire can be confined at such a time only by the holding of the cigarette under the physical control of the person himself. That is the only sense in which it can be said to be confined or contained. If while the cigarette is lighted, the person desires to put it aside temporarily, or to discard it, he may put it in an ash tray or some other suitable receptacle. The burning cigarette is then confined in a place where it is intended to be. As long as the cigarette remains there, the fire in the cigarette is a friendly fire and, for any damage it might cause while in its proper place, there can be no recovery. But, if through accident the

cigarette gets on the floor and causes damage to a rug by charring or scorching it, the fire in the cigarette is no longer a friendly fire but is a hostile one, because it is then in an improper place, and, therefore, is doing harm.

We must, therefore, differentiate the instant cases from all those which have been decided in accordance with the doctrine laid down in *Austin* v. *Drew, supra*. In each of them, as in that case, a fire had been started in a proper place, such as a furnace or some other container, where it was performing a useful service, and the damage complained of was not caused by the fire getting out of its proper place. It was solely the result of some accidental cause which did not operate upon the fire itself but upon its consequence, like the smoke, soot, hot air or heat which it produced while remaining in its proper place. In the instant cases the accidental element operated upon the fire itself by causing the lighted cigarette to get upon the rug. Manifestly in *Austin* v. *Drew, supra*, and the cases in accord therewith the friendly fire, intentionally started or placed in a container and remaining in its proper place, was the only fire, and it was correctly held that there could be no recovery in the absence of proof of a second fire, which, though it may have been caused by the first fire was otherwise independent of it. Out of those cases has come the doctrine that to establish liability for damage to property originating from a friendly or intentional fire, proof of a second fire is necessary.

The defendants insist upon the application of this doctrine in the instant cases, and urge that "in the absence of proof that the damage is caused by a fire other than that of a burning cigarette, there can be no recovery. In other words, the plaintiff must prove that his damage is the result of a fire separate and distinct from the burning cigarette itself." We do not deny the soundness of the rule laid down in *Austin* v. *Drew, supra*, but we do not think the facts of the instant cases call for its application as urged upon us. Before applying the rule, we must first inquire whether the

burning cigarette in its position on the rug beneath the smoking stand was in the place where it was intended to be and was therefore a friendly fire. If not, then it was a hostile fire, and damage caused by it to the rug is recoverable under these policies.

We think the facts here are somewhat similar to those in *Cabbell* v. *Milwaukee Mechanics Insurance Co.*, 218 Mo. App. 31, 260 S. W. 490, (1924), at least in the manner in which an original friendly fire became converted into a hostile fire. In that case live coals were ejected upon the basement floor from a furnace by the explosion of a hot-water heating device. Damage from smoke, soot and ashes permeating the house resulted, but nothing else was on fire outside the furnace except the ejected coals. In holding the damage recoverable, the court said: "To constitute loss or damage by fire, within the usual terms of a policy, there must be actual fire, and it 'must be a hostile fire, that is, one which becomes uncontrollable *or breaks out from where it was intended to be, and becomes a hostile element,* and where there is such a fire, recovery may be had for resulting losses or damages in regard to which there has been no actual ignition, such as a loss or damage *caused by smoke and soot, or by heat.* Where the fire is a friendly one, that is, one which is employed for the ordinary purpose of lighting, heating, or manufacturing, *and is confined within its usual limits* . . . it is not a fire within the usual terms of a policy and recovery cannot be had for loss or damage caused thereby, such as damage caused by . . . smoke or soot.' (26 C. J. 340) (Italics ours.)" Thus the fire in the coals while in the furnace was a friendly fire but, by escaping from confinement in the receptacle where they were intentionally ignited originally, they became a hostile fire. In the instant cases the burning cigarette was unquestionably a friendly fire, originally. In some unknown manner it got upon the rug, probably by falling from the smoking stand or perhaps by being carelessly dropped there. In whatever manner, unless by design of the assured, it got

where it did not belong, it became a hostile fire, although it was the same burning cigarette that a moment before was a friendly fire. The change in the *locus* of the fire changed its character; it then became "a fire out of place," so-called, and "a fire out of place" is a hostile fire. *Collins* v. *Delaware Insurance Co.*, 9 Pa. Super. Ct., 576, (1898); *Hartford Fire Insurance Co.* v. *Armstrong*, 219 Ala. 208, 122 So. 23, (1929). In the latter case the court, after reviewing the authorities on the point, said: "If, therefore, under this rule the smoke and soot were produced from a fire 'out of place,' it is no answer to a suit on the policy that it originated in a fire in the place fitted and intended for it. When being 'out of place,' it is a hostile fire, and damage suffered in consequence thereof is within the protection of the policy."

This is the fundamental basis of the decision of the English court in *Austin* v. *Drew, supra,* as clearly appears from the following statement by GIBBS, C. J.; "Had the fire been brought out of the flue, and anything had been burnt, the Company would have been liable." This was also the view of that case taken by CUSHING, J. in *Scripture* v. *The Lowell Mutual Fire Ins. Co.*, 10 Cush. 356, (1852), where he said: "If, in *Austin* v. *Drew,* the fire had been where it ought not to be, if, even with careless management, it had burned the building, and notwithstanding it was fire maintained only for the purpose of manufacture, then all the observations of the court go to show that, in this instance, as in that of the whaleship mentioned in Emerigon (1 Tr. de Ass. 436) the insurers would have been held to be liable for the loss."

This view has been held generally since then in America by those courts that have followed *Austin* v. *Drew, supra,* except in Wisconsin,—*O'Connor* v. *Queen Insurance Co.*, 140 Wis. 388—where the court adopted the view that, where a friendly fire became excessive, although it remained in place, it thereby became hostile and damage caused by the excessive heat could be recovered under the policy without proof of a second fire. But MARSHALL, J., in a strong

dissenting opinion in that case, disagreed with the majority, and stated the true basis of *Austin* v. *Drew, supra,* and cases following it, in the following words: "What is the basic theory of the cases cited in the court's opinion? Though it seems not to have been kept clearly in view in every instance, is it not that, the term of the policy in question, 'direct loss or damage by fire,' excludes fire so long as it is confined to its appropriate place, as a stove or furnace, and contemplates fire as a producing cause existing outside of any such place. It is, seemingly, conceded that those words do not mean a fire, so long as confined in its appropriate place. . . . It (*Austin* v. *Drew, supra*) did not go on the mere fact that the fire was a usual and so 'a friendly fire,' but upon the ground that the fire was in its proper place and all the results were mere incidents thereof, *i. e.,* the proximate cause was the fire in the stove because there was no fire elsewhere."

It seems to us that this clearly states the ground of the English case and that is the view this court took in *Solomon* v. *United States Fire Insurance Co., supra.* There, in denying liability, it was said, at page 159: "The damage in the case at bar was caused by one fire which was intentional and within the place where it was intended to be."

The article in Harvard Law Review, *supra,* sums the matter up in this way: "It is not material whether the fire which caused the injury was excessive or not excessive. The *locus* and origin of the fire, not its size, is the logical and proper test of its accidental character."

In the cases before us we have a burning cigarette on a rug causing damage to the rug by scorching or charring it. There is no claim that there was a second fire in the rug itself. The issue is simply whether the burning cigarette on the floor is an intentional fire in the place where it was intended to be. The origin of the fire is not in dispute but the *locus* of it is. It becomes necessary to rule as a matter of law whether a fire in a burning cigarette on the rug, not intentionally placed there by the insured, is a fire in place

or a fire out of place. It seems to us that there can be only one reasonable answer to this question and it is this, that under the circumstances the burning cigarette on the rug was not a fire in a place where it was intended to be and that, therefore, it was then a hostile fire, and the damage caused by it to the rug is recoverable under the policies.

Our decision is for the plaintiff against the defendant The Connecticut Fire Insurance Co. for $12.00, and for the plaintiff against the defendant The Home Insurance Co. for $24.00.

The papers in each case with our decision certified thereon are ordered sent back to the superior court with direction to enter final judgment for the plaintiff in each case on the decision.

*Edward F. McElroy, William I. Matzner,* for plaintiff.
*Sherwood & Clifford,* for defendant.